## SARAH C. PICKETT *v.* BUCKNER, NEWMAN & CO.

1. DOWER — MORTGAGE BY HUSBAND DURING COVERTURE IS A "CONVEYANCE" WITHIN ART. 162, P. 467, CODE 1857. — A mortgage in fee, executed by the husband during coverture, in good faith, to secure a debt, is a "conveyance for a valuable consideration within the statute," and imposes an incumbrance upon the estate, to which the dower of the widow is subordinate.

2. SAME — MAY BE ASSIGNED UNTIL FORECLOSURE. — Until foreclosure, after the death of the husband, the widow may have her dower assigned, but it will be subject to the mortgage.

3. SAME — WIDOW MAY REDEEM AND COMPEL HEIR TO CONTRIBUTE. — The widow may redeem the land by payment of the mortgage debt, have her dower assigned, and compel the heir to make contribution.

4. SAME — WIDOW ENTITLED TO DOWER IN SURPLUS AFTER FORECLOSURE. — Upon foreclosure, after the death of the husband, the surplus being the value and representation of the equity of redemption she may be endowed of that.

APPEAL from the chancery court of Yazoo county. SHACKLEFORD, J.

A bill was filed in this case to foreclose a mortgage executed by R. K. Pickett in his life-time. His widow filed a plea in bar stating that her late husband, R. K. Pickett, had

died "seized and possessed" of the land embraced in the mortgage. This plea was overruled and this appeal has been prosecuted to reverse the decision of the court below.

*Miles & Epperson* and *Ellett & Phelan*, for appellant.

The conditions to entitle a widow to dower, by the common law, were marriage, seizin of the husband at any time during coverture, and death of husband. 2 Black. Com. 129. This was the law of Mississippi until the Code of 1857, the widow being entitled to dower in all lands, etc., "of which her husband died, seized and possessed, or had before conveyed, whereof the said widow had not relinquished her right of dower as provided by law." Hutch. Code 621, art. 2, sec. 1. By the Code of 1857 the latter member of the sentence was altered so as to read, *"or which he* had before conveyed *otherwise than in good faith and for a valuable consideration*, whereof," etc. The words italicized being added. Rev. Code, 467.

The widow is entitled to dower in all the real estate of which her husband was seized during coverture, not conveyed by him, in good faith, for a valuable consideration. It is to be observed that the words here employed are all technical, having a settled, legal signification, and are therefore to be understood in their technical sense. Livermore v. Bagley, 3 Mass. 487. Dwarris on Stat. 702, 766. 9 Law Lib.; Sedgw. Stat. and Const. Law, 261 ; 1 Kent. 462. Alienation, conveyance and purchase, are treated as synonymous terms, and comprise "any method wherein estates are voluntarily resigned by one man, and accepted by another." 2 Black. Com. 287.

A "conveyance" is "a deed which passes or conveys land from one man to another." 2 Jac. Law Dic. 60, title Conveyance ; 1 Bouv. Law Dic. 311, title Conveyance ; 1 Whart. Law Lex. 210, title Conveyance ; 2 Hill. on Real Prop. 264 ; 5 Mass. 472 ; 2 Black. Com. 309.

"Conveyances" are either, 1st, at common law; or, 2d, under the statute of uses.

1. Conveyances by the common law are original, whereby an estate is created or derivative, whereby it is modified, etc. Original conveyances are: 1st, feoffment; 2d, gift; 3rd, grant; 4th, lease; 5th, exchange; 6th, partition. Derivative are, 7th, release; 8th, confirmation; 9th, surrender; 10th, assignment; 11th, defeasance.

2. Conveyances under the statute of uses are, 12th, covenants to stand seized to uses; 13th, bargain and sale; 14th, lease and release; 15th, deeds to lead or declare uses; 16th, deeds of revocation of uses. 2 Black. Com. 309–341.

The foregoing enumeration embraces every mode of "conveyance" known to the law, and is adopted and followed by every writer of authority. It is remarkable that in Sheppard's Touchstone of Common Assurances there is no title "Mortgage." 2 Jac. Law Dic. 60, Conveyance; 1 Bouv. Law Dic. 311, Conveyance; 1 Whart. 210, Conveyance; 1 Sheppard's Touchstone, 1; 4 Kent. (480) 567.

Mortgages are never alluded to by these authors when treating of "conveyances;" a strong proof that they are not included by the term when used in any technical sense. On the contrary, "mortgage" is a distinct head of jurisprudence, always treated by itself, and its definition is very different from that of a conveyance.

The strictness with which the legal notion of a "conveyance" is adhered to by the courts is illustrated by the case quoted from 3 Mass. 487 (see p. 510), where the clause in the U. S. bankrupt act, to the effect that "any person who shall make any fraudulent conveyance of his lands or chattels" shall be deemed a bankrupt, was held to require, even in reference to chattels, a conveyance by deed; and a transfer by bill of parcels, with a receipt, and delivery of the articles, was decided not to be within the act, though actually fraudulent. Technical terms, the court said, must be construed "in a precise and technical sense," and "the

popular sense in opposition to the technical cannot be adopted."

On the other hand, while the original idea of a mortgage by the common law was, that it created an estate in fee in the mortgagee, defeasible on condition subsequent, by payment of the debt at the day, in default of which the estate became dead and gone for ever from the mortgagor (2 Black, 158) ; yet this doctrine has long been obsolete. Even when it prevailed, a mortgage was defined in this peculiar language, as "a pawn of land or tenement, or any thing immovable, laid or bound for money borrowed, to be the creditor's forever, if the money be not paid at the day agreed upon; and the creditor holding land or tenement upon this bargain is called 'tenant in mortgage.'"  4 Jac. Law Dic. 312.    "It is, in acceptation of law, an obligation or debt by specialty, whereby lands or tenements of a debtor are pawned or bound over to the other for money, or other effects borrowed."    2 Whart. Law Lex. 658, Mortgage ; 1 Hilliard, 1, 2.

The doctrine of courts of equity from an early day has been, that the mortgagor is the real owner of the land until foreclosure, and that he is possessed of it in his ancient and original right, the equity of redemption being, in fact, the ancient estate in the land without change of ownership, and a mortgage in fee being only personal assets.    Lord Hardwicke in Casbourne v. Scarfe, 1 Atk. 602, 603 ; Coote on Mort. 42, 60 ; 18 Law. Lib. 18, 26.

Such soon became the rule at law, even in England. Lord Mansfield in Martin v. Mowlin, 2 Burr. 969, said : "A mortgage, is a charge upon the land, and whatever would give the money will carry the estate in the land along with it to every purpose.    The estate in the land is the same thing as the money due upon it.    It will be liable for debts ; it will go to executors ; it will pass by a will not executed with the solemnities required by the statute of frauds.    The assignment of the debt, or forgiving it, will draw the land after it as a consequence ; nay, it would do it though the

debt were forgiven only by parol, for the right to the land would follow," etc.   1 Hill. on Mort. 236; 1 Johns. Ch. 583; Rex v. St. Michaels, 2 Doug. 630; 1 Hill, 154.

The American doctrine, both at law and in equity, is the same.   The mortgagor, before foreclosure, is seized of the freehold, and regarded as the real owner.   The mortgagee has only a chattel interest, which goes to the executor as personal assets.   The heir of the mortgagee is not even a necessary party to a bill to foreclose.   1 Hilliard, 158, 160, 254, 255, 280, § 21, ch. 9 and 11; 4 Kent, 45 *et seq.* (159, 160), note C, (193, 195) note A; 2 Lead. Cas. in Eq. part 2, 412, 421, 447, 449, top p.; Hutchins v. King, 1 Wall. 53, 57; Montgomery v. Bruere, 1 South, 278; a dissenting opinion by Judge Southard, adopted by the court of errors, 2 ib. 865, and by the supreme court in 1 Harr. 128; Ladue v. Detroit & M. R. R. Co., 13 Mich. 380; Jackson v. Millard, 4 Johns. 42, 44; Hitchcock v. Harrington, 6 Johns. 294, 295; Runyon v. Mersereau, 11 ib. 538; Coles v. Coles, 15 ib. 320; Jackson v. Bronson, 19 ib. 325; Clark v. Beach, 6 Conn. 142; Kenna v. Smith, 2 Green's Ch. 14; 2 Stockton's Ch. 323, 328; 20 Me. 111.  It will not do to take our doctrines of mortgages from Littleton and Coke.   4 Kent, 194, note.   The wife of the mortgagor is entitled to dower in lands mortgaged in fee before marriage; the wife of the mortgagee is not.   1 Scrib. on Dower, ch. 22, 23, p. 446, 455, 557; 4 Kent, 44, 55, 160, 161, 162; 1 South. 278; 6 Johns. 294; 7 ib. 278; 15 ib. 319; 10 Paige, 67, 68; 2 How. 292; 3 ib. 360.

The mortgagor is a freeholder, the mortgagee not.   1 South. 279; 4 Kent, 160.   Executor of the mortgagee is the only necessary party complainant; the executor of the mortgagor is not a necessary party to a bill to foreclose.   Calvert on Parties, 167, 168; Story's Eq. Pl. 181, § 196; Duncombe v. Hunstey, 3 P. Wms. 333, note A.

Mortgage is a mere security, and is an incident to the debt.   2 Gall. 154, 155; 4 Johns. 43; 11 ib. 534; 19 ib. 325; 1 Johns. Ch. 583. The right of mortgagee to recover possession

by ejectment is only one of his remedies to procure satisfaction of his debt. 1 Hilliard, 244 ; 2 ib. 99, 106, 107, 108, ch. 29 ; Hutchins v. King, 1 Wall. 58, 59 ; Montgomery v. Bruere, 1 South. 279 ; Den v. Spinning, 1 Hal. 471 ; Reeves' Dom. Rel. 53 ; Sampson v. Williamson, 6 Texas, 122, 123. When possession is obtained, the mortgagee holds as a trustee, and is chargeable with all the rents and profits toward satisfaction of his debt. 1 Hilliard, 448 ; 4 Kent. 166, 168 ; 2 Hill, 107 ; 2 Lead. Cas. in Eq., part 2, 447, top ; 1 Johns. Ch. 385 ; 3 ib. 30 ; 5 Paige, 9 ; 10 ib. 49, 73 ; 2 Hal. 408, 409 ; 5 Pick. 260. That the mortgagor continues the owner, not accountable for rents and profits, nor liable for waste, and that the mortgagee has only a lien as security for his debt. 2 Apple. 111 ; 1 Ala. 708 ; 11 N. H. 274 ; 15 Conn. 556 ; 3 Iowa, 37.

On general principles, then, and in view of the reason and nature of the thing, a mortgage cannot be regarded as a conveyance of the land, in good faith, for value.

Mortgages are not considered conveyances of land within the statute of frauds. Green v. Hart, 1 Johns. 590 ; Runyon v. Mersereau, 11 Johns. 534 ; Clute v. Robinson, 2 ib. 612 ; Powell on Mort. 187. A mortgage is not an alienation. 1 Hilliard, 158, 159. Where a statute makes an unregistered mortgage void against a *bona fide* purchaser, a second mortgagee was held not to be a purchaser. Berry v. Mutual Ins. Co., 2 Johns. Ch. 611, 612.

A statute gave the defendant, and his grantees and judgment creditors, a right to redeem land sold at sheriff's sale. A mortgagee held not to be a grantee within this act. Van Rensselaer v. the Sheriff, 1 Cow. 508, 511. A statute made judgments confessed, without certain specifications, void against other *bona fide* judgment creditors, and every *bona fide* purchaser for valuable consideration. A mortgagee held not to be such purchaser. Seaving v. Brinkerhoff, 5 Johns. Ch. 331 ; James v. Morey, 3 Cow. 314, per Savage, J. A statute giving the landlord the right to follow goods removed by the tenant, excepted such goods as had been

"sold, in good faith, for valuable consideration" before seizure. A mortgage is not a sale within this act. Reynolds v. Shuter, 5 Cow. 329.

A mortgagee of a term is not considered the assignee of the term, a mortgage not being a conveyance. Astor v. Hoyt, 5 Wend. 616. The assignee of a mortgage is not a purchaser. Clute v. Robinson, 2 Johns. 601, 602. The estate of a mortgagee has not one single characteristic of a legal estate. 1 South. 278. A mortgage does not convey the legal title, and the fee remains in the mortgagor even after condition broken. Thayer v. Cramer, 1 McCord's Ch. 395 ; Seals v. Cashin, 2 Ga. Decis. 76 ; "not a conveyance." "The mortgagee, out of possession, is considered, at law, as well as in equity, as having nothing but a chattel interest in the estate, and the mortgagor, for every substantial purpose, is the real owner." Astor v. Miller, 2 Paige, 77.

The debt is the principal, the mortgage the incident, and passes by the assignment of the debt. Green v. Hart, 1 Johns. 583 ; Clute v. Robison, 2 ib. 612. The land cannot be taken for the debts of the mortgagee, but is generally liable to execution for those of the mortgagor. Smedes & Marsh. Ch. 430 ; 4 Johns. 423 ; 1 Wall. 58. The mortgage cannot be assigned separate from the debts. 4 Johns. 43, 44 ; Hutchins v. King, 1 Wall. 58 ; Jackson v. Bronson, 19 Johns. 325.

A mortgagor in possession gains a settlement under the poor laws as owner. As a freeholder, he serves as a juror, or member of the legislature ; is received as bail ; is liable for taxes ; may vote for members of parliament, and is qualified under the game laws. 1 Hilliard, 164, 165, and notes.

It is true that a small portion of the ancient technical doctrine of the common law is still retained here. It is held that the legal title passes to the mortgagee, and that the entry of satisfaction on the record, or a reconveyance, is necessary to revest that title in the mortgagor. The title

of the mortgagee is said to be equitable merely, and all his remedies are in equity. Hence, an unsatisfied debt may be set up by a stranger, to defeat an ejectment by the mortgagee. Thompson v. Wheatley, 5 Smedes & Marsh. 499 ; Brown v. Bartee, 10 ib. 268 ; Wolfe v. Dowell, 13 ib. 103 ; Smith v. Otley, 26 Miss. 291 ; Heard v. Baird, 40 ib. 793.

The exception is admitted that, after satisfaction, the holder of the naked, legal title cannot recover the land from the mortgagor, or other *cestui que trust.* Brown v. West, 7 How. 181.

The modern doctrine of law and equity, as to the respective estates of mortgagor and mortgagee, in regard to quantity, is fully recognized in Mississippi. A mortgage is here held to be a mere security for a debt, and, until a decree of foreclosure, the mortgagor continues the real owner of the fee, and the equity of redemption is considered as the real and beneficial estate. Watson v. Dickens, 12 Smedes & Marsh. 615 ; Nevitt v. Bacon, 32 Miss. 225, 226 ; Whitehead v. Middleton, 2 How. 692, 697 ; Wooldridge v. Wilkins, 3 How. 360, 369, 370.

By statute, no estate in land, for a longer period than one year, will pass without a deed, yet the assignment of a note, secured by mortgage, carries the land with it, as incident to the note. Tanner v. Hicks, 4 Smedes & Marsh. 300 ; Terry v. Woods, 6 ib. 149 ; Dick v. Maury, 9 ib. 456 ; Henderson v. Herrod, 10 ib. 633 ; Bush v. Cooper, 26 Miss. 599. A mortgagee is not the owner of the land. His interest before foreclosure is a chose in action. Boisgerard v. Wall, Smedes & Marsh. Ch. 430 ; 11 Smedes & Marsh. 574.

Judge Sharkey, discussing the validity of an unrecorded deed, as against purchasers and creditors, says: "A mortgagee is but a creditor. He is not regarded as a purchaser, and hence the statute of Anne declared unregistered conveyances should be void as to all subsequent *bona fide* purchasers and mortgagees." Dixon et al. v. Lacoste, 1 Smedes & Marsh. 105.

A deed of trust to secure debts is not a conveyance within the statute of frauds. For the creditor, so secured, "is not a purchaser, nor does he part with his money for an interest in the land. His situation is that of a mere creditor." Distinction between conveyance and deed of trust, Harney v. Pack et al., 4 Smedes & Marsh. 229, 254, 257.

In Magee v. Young, where the court were led to consider the whole subject, "conveyances" under this dower act are treated as synonymous with "alienations," and as distinct from "incumbrances" created or suffered by the husband. "Alienations" are regarded as "authorized by the statute," while the power of the husband to bar the wife's dower by "incumbrances created or suffered by him" is denied. This draws the very distinction for which we contend. 40 Miss. 171, 172.

The case of Jiggitts v. Jiggitts supports the same view. The court say "the provisions requiring a valuable consideration in order to support a conveyance affecting the wife's right of dower, contemplates that the husband is to acquire property or means which may be an equivalent to the wife for the right which she loses by the conveyance. It contemplates value received in which the widow may have a benefit in lieu of the right conveyed." 40 Miss. 722, 723.

This language is only applicable to such conveyances as pass the land absolutely to the purchaser, and not to mere liens or incumbrances upon it, as security for the payment of a debt. It contemplates that the consideration received for the conveyance is capital, to be invested in other property, in which the widow will have an interest.

The provision of the Rev. Code, 308, art. 12, is a mere declaration of the law as settled by the authorities above quoted, as to the effect of a mortgage. Its object was merely to introduce here the rule that prevails in most, if not all, of the other states, making the equity of redemption liable to sale on execution. It denies to a mortgage the effect of a conveyance of the legal title, except so far as to

reserve to the mortgagee the right to obtain the possession by action at law after forfeiture, for the purpose of securing the rents and profits toward the satisfaction of his debt. The language is:

"Before a sale under a mortgage or deed of trust, the mortgagor or grantor shall be deemed the owner of the legal title to the property conveyed in the mortgage or deed of trust, except as against the mortgagee and his assigns, or the trustee, after breach of the condition of such mortgage or deed of trust." Heard v. Baird, 40 Miss. 799. But the question, whether a mortgage is such a conveyance as will bar the widow of dower, seems further settled in the negative, by the decisions in Mississippi.

A mortgage in fee, executed by the husband before marriage, is not such a conveyance as to destroy his seizin, but on his subsequent marriage, the wife is entitled to her dower in the equity of redemption. This was settled in Mississippi at an early day. Whitehead v. Middleton, 2 How. 692; Woolbridge v. Wilkins, 3 How. 369, 370.

In the case supposed, the husband continued seized, notwithstanding the mortgage, and the right of the wife attached, upon the marriage, in the estate of which the husband was seized at the time of the marriage, that is, in the land subject to the mortgage. An absolute sale before marriage would, of course, have destroyed the seizin, and a subsequent wife could have acquired no right of dower.

Now admitting that an absolute sale made since the dower act of 1857, would have the same effect to destroy the seizin of the husband and defeat the existing wife of her dower, how can a mortgage made during coverture, since the act of 1857, have such an effect? The very doctrine of the cases last quoted is, that a mortgage is not a conveyance which will bar dower, but the husband continues seized, and surely it is only by means of a conveyance that is sufficient to destroy the seizin of the husband, that the wife can be concluded. Unless the ownership of the property

is changed, the right of the wife to dower cannot be affected.

Other considerations of a more general nature strongly fortify our position.

1. The right of dower is a moral right. 1 Scrib. 20, 21, § 32; Banks v. Sutton, 2 P. Wms. 702.

2. It is a right secured by the common law, and any statute impairing it must receive a strict construction in favor of the widow. Jiggitts v. Jiggitts, 40 Miss. 725. "No case can be adduced where a statute should be more strictly construed in favor of a common-law right, than one depriving the widow of 'the ancient and cherished right of dower.'" Combs v. Young, 4 Yerg. 228.

3. Dower is entitled to special protection, for it is one of the favorites of the law. "The tenant in dower is so much favored as that it is the common by-word of the law that the law favoreth three things: 1st, life; 2d, liberty; 3rd, dower." 1 Scrib. on Dower, 21, § 33; Park on Dower, 2; 11 Law Lib. "Dower was, indeed, proverbially, the foster child of the law, and so highly was it rated in the catalogue of social rights, as to be placed in the same scale of importance with life and liberty. *Favorabilia in lege sunt, vita fiscus, dos libertas.*" Park, 2; 11 Law Lib.

It may probably be argued that the power to deprive the wife of dower by alienation includes the power to do so by mortgage, on the principle that the greater includes the lesser. "*Omne majus in se continet minus.*"

This is a principle of limited application in the execution of powers under settlements. In Isherwood v. Oldknow, 3 Maule & Selw. 392, which is the leading case on this subject, there was a power given to the tenant for life to make a lease for twenty-one years, and he made a lease for fourteen years; and it was held good. Lord Ellenborough said the power was certainly made with a view of limiting the extent of the benefit to the tenant for life, and to place the time under guards and restrictions as to its duration. That the time specified is the greatest period allowed him, and

includes power to lease for a less time. Le Blanc, J., said, it was in order to prevent the tenant for life from going beyond that period, and is the same as if it had said, "so as the lease shall not exceed twenty-one years to the prejudice of the remainderman." It is to such cases the maximum applies, where the essential thing is that the power shall not be exceeded. But, if a mode of executing the power is prescribed, it must be strictly followed; as in the case of settlements for the benefit of married women, with a power of disposition. Doty v. Mitchell, 9 Smedes & Marsh. 447; Montgomery v. Agricultural Bank, 10 ib. 566. And in the case from Maule & Selw., Le Blanc says, the nature of the lease permitted by the power cannot be altered. "Therefore, if there be a power to grant a freehold interest, and the grant be of a chattel, it is not within the power." So that, if this was a power, and we are right in supposing the act to require a sale, a mortgage would not be within the power.

But this is not the execution of a power. It is a general regulation by law of the mode of transferring estates. The wife, by the general law, is entitled to dower. By a certain act, the husband can defeat that right, to wit, by a conveyance, in good faith, for value. Nothing else, nothing less, will have the effect. No other act will do; no substitute, no equivalent is allowed. The condition must be strictly performed. Suppose it was going to Rome; would going half way suffice? Would a conveyance in bad faith, or without consideration, answer the purpose? Yet these would be a partial and minor execution of the condition.

We are constantly brought back to the question, what is a "conveyance" within the statute? If a mortgage is less than a conveyance contemplaced by the act, or something different from it, it will not cut off the wife from her dower.

We have already shown that the act, being in derogation of her common-law right, must be construed with the utmost strictness in her favor.

And, even regarding the case in the light of the execution of a power, it is clearly settled that a power to "sell and dispose of land in fee simple, or otherwise," does not include a power to mortgage. Bloomer v. Waldron, 3 Hill, 366; Albany Fire Ins. Co. v. Bay, 4 Comst. 9; Clark v. Courtney, 5 Pet. 347; 2 Blatch. 62; 1 Hilliard on Mort. 160, § 10.

True, a mortgage is often spoken of as a "deed" or a "conveyance;" but when that is the case, the words are used in a popular, not in their technical, sense, and they are then usually qualified by the addition of the words "of" or "in mortgage."

"Mortgage" is a term of art, appropriated by the law to express a definite idea, and it has no synonym. It is in one sense a "deed," for it must be under seal; and it may, in a certain sense, be called a "conveyance," for it is so in some of its forms, and it may be used as evidence of a right of possession, to recover the land as a means of enforcing payment of the debt. But the mortgagee in possession can only hold until the rents and profits are sufficient to pay his debt, and he may be dispossessed at any time on payment by the mortgagor.

The statute can only be understood as speaking of instruments that operate absolutely as alienations and transfers of land, which a mortgage is not, either at law or in equity.

*Wilkinson & Bowman,* for appellees.

Was Pickett, the husband, at the time of his death, "seized and possessed" of lands mortgaged by him so as to entitle his wife to dower?

Seizin is one of the requisites of dower, and by the Code of 1857, to give dower to the wife the husband must die seized and possessed, or he must have conveyed fraudulently.

Code, p. 308, art. 12, declares "that before sale, etc., the mortgagor shall be deemed the true owner, except as against the mortgagee," and this clause has been construed in this

court.  In Whitehead v. Middleton, 2 How. 696, the court says, " the want of a sufficient seizin of the husband is held to be the reason why the wife is not entitled to dower as against the mortgagee.  Seizin either in law or fact being essential to dower, but this rule prevails only as against the mortgagee ; as to all other persons the mortgagor is deemed to be seized, and therefore the widow is entitled to dower of an equity of redemption."

So in Woolridge v. Wilkins, 3 How. 369, the widow is entitled to dower in the proceeds of sale, after satisfying the mortgage made before marriage.

Before 1857 seizin during coverture was necessary to give dower and as against the mortgagee.  The widow was not dowable of lands mortgaged before marriage.  By the Code of 1857, the rule was changed, and seizin at the death of the husband made necessary to give dower to the wife, and we contend that in lands mortgaged during coverture, the wife, as against mortgagee, is not entitled to dower, because as between mortgagor and mortgagee the seizin is in the mortgagee.  Under the Code of 1857, the mortgagee at the death of the husband and against him was seized, and the widow not entitled to dower.  And the widow now stands as to lands mortgaged during coverture precisely where she stood before the act of 1857, as to lands mortgaged before coverture, in either case as against the mortgagee, she is not entitled to dower.

SIMRALL, J. :

The important question is presented, for the first time in this court, whether a mortgage in fee, made by the husband during coverture, bars his widow of dower.

Dower, at common law, is a right institutional in character, arising in law, and not out of the pact or consent of the parties.  Marriage and seizin are the facts from which it springs, and at once fastens upon the land by a right paramount to that of any person claiming upon the husband by a subsequent act.  2 Coke Litt. 32.  It results, therefore,

that neither the alienation of the husband, nor any act suffered or done by him, such as bankruptcy, confers a title upon the alienee, or the assignee, which will defeat dower, if the right of the dowress becomes consummate by survivorship. All incumbrances and derivative interests created by the husband subsequent to the occurrence of the facts upon which the inchoate right of the wife arises, are subordinate to her claim, and will be postponed and displaced, in so far as they conflict with her right, when it becomes complete and consummate.

The right of the dowress is dependant upon, and grows out of the title of the husband. It is a derivative; and offshoot from it. If, therefore, the husband loses the land by title paramount, the inchoate interest of the wife falls with it. It is the same thing in law, as if the husband never had seizin. If the dower has been assigned, it necessarily terminates upon an eviction under a title superior to that of the husband.

It follows also, from the nature of this inceptive right, that it takes hold of the land subject to all the incumbrances and charges placed upon it by the husband prior to the marriage and seizin. Nor does it matter how these charges were created; they may be the result of contract, as a mortgage, or an incident of the law, as a statute staple or judgment lien.

Much as the marital rights of the wife, chief of which is dower, are favored, they are not so highly esteemed as to curtail or impair any estate or charge upon the land, older than the marriage and seizin, and which upon foreclosure or enforcement would divest the freehold title of the husband. Chancellor Kent (4 Comm. 50), says the wife's estate is part of the husband's, derived from him, and must be subject to all the incumbrances existing against it at the time of the marriage, or its inception." This right is liable to be destroyed by any claim or incumbrance existing before its inception, and which would defeat the husband's

seizin.  Scott v. How, 3 Barb. 319 ; Trustees v. Pratt, 10 Md. 11.  Such were the rules of the common law.

Prior to the adoption of the Revised Code of 1857, dower here was very much the same as at the common law.  The Code made some important changes.  Prior to that time, the wife was dowable of all the lands of which the husband was seized of an estate of inheritance, at any time during the coverture, and of which she has not made relinquishment. The specific change made by the Code is, that she is dowable of all the lands of which the husband "died seized and possessed," and those conveyed during the coverture *mala fide*, and not upon a valuable consideration.

Bringing the principles of the old law into juxtaposition to these changes, we can the more distinctly mark and observe their scope and extent.  As we have seen, when once the inchoate contingent right of the wife vested in possibility, the husband had no power, by any thing that he could do or suffer, to defeat it.  The right of taking hold of the land, as part of the husband's title, instantly, upon, a beneficial seizin in him, it followed that any mortgage or other conveyance made by him, after the seizin, was inoperative to affect her right.  It would vest absolutely upon the contingency of her surviving the husband.

Under the statute, the inceptive interest of the wife is contingent and defeasable upon another event than survivorship of her husband.  If the husband, in good faith, and for a valuable consideration, conveys the land, then her inchoate right ceases to exist, and is defeated.  If he make a voluntary conveyance or a devise, her right in possibility goes along with the land to the donee or devisee.  In either of these cases, survivorship is the only contingency to consummate her title.

The wife has no claim upon any land conveyed by her husband, in good faith, and for a valuable consideration, during the coverture.  Upon all other lands of which he had beneficial seizin during coverture, or of which he died seized and possessed, she may be endowed.

Is a mortgage in fee simple a conveyance for a valuable consideration, within the intendment of the statute?

Much of the doubt and difficulty which environs the subject arises from not analyzing the instrument, and closely observing its two fold character, looking at it both in its legal and equitable aspects.

A mortgage in fee serves a complex purpose; it is a security for a debt, and at the same time a conveyance of the estate. In strictness it creates a conditional estate, or an estate upon defeasance. It transfers the estate to the mortgagee upon the condition, that, if the debt is paid on the day named, it shall be void. If default is made, the estate which before was conditional, has become absolute. The mortgagee has a right of entry, and the land has gone from the mortgagor forever. Payment after the day did not restore the title to the mortgagor. Litt. 338. Breach of the condition made the title absolute in the mortgagee. Hill v. Robertson, 24 Miss. 375. Compliance with the defeasance by performance or offer to perform, defeats the title of mortgagee. But if the estate becomes absolute by forfeiture of the condition, the wife of the mortgagee is entitled to dower, and the estate is subject to any incumbrance, the husband may impose upon it. Litt., § 332; 2 Black Com. 158; Powell on Mort. 9, 10; Parsons v. Wells et al., 17 Mass. 421. This doctrine is vindicated by the principles, which regulate estates upon condition. The seizin of the mortgagor was gone the moment the estate became absolute, and the mortgagee could enter, or could recover the possession upon the strength of his title. This seizin must be beneficial, though but for an instant of time. Therefore, if the husband is the mere conduit to pass the title, as where the same act which gives the estate, transfers it to another, there is not such seizin as will support the claim of dower. As also where the vendee, when he accepts a deed, mortgages the land back to the vendor for a part or the whole of the purchase-money, the right to dower is subordinate to the vendor's security, for these are treated

as one transaction, as much as if both were incorporated into the same instrument.   4 Kent, 38 ; Park on Dower, 43 ; Co. Litt. 31.

The doctrine of the English courts was well settled before the passage of the statute 3 & 4 Wm. IV, chap. 105 ; that the widow was not dowable of equitable estates, hence she had no right of dower in the equity of redemption.   Important modifications were made by the courts of equity, as its principles became more expanded, and its jurisdiction fully established.   The court of law treated the title as absolute in the mortgagee after forfeiture, and could afford no remedy. Courts of equity, however, on the basis of relieving from forfeiture, where substantial justice could be done, interfered, after breach of condition, and allowed the mortgagee within a reasonable time to redeem.   The legal title was still recognized to be in the mortgagee.   This favor of redemption is granted on the terms of doing complete right, and discharging conscientious obligations.   If a person mortgages land to A. and afterward to B., who at that time has no notice of the mortgage to A., B. may purchase in a precedent mortgage, although nothing be due upon it, and thereby prevent A. from redeeming unless upon the terms of satisfying the mortgage to B. ; for B. by purchasing in the precedent mortgage obtains the legal estate ; and equity will not disturb the legal title and equity on one side, and equity only on the other.   Powell on Mort. 479 ; 2 Vern. 157.   So if the mortgagor borrow more money on bond, binding the heir, courts of equity will not permit the heir to redeem, without paying the bond as well as the mortgage debt, because the legal estate being in the mortgagee after forfeiture, equity will not interfere with or defeat it, unless the heir shall satisfy all equitable demands.   3 Bac. Abr. 652.

On strict principle, the only remedy of the mortgagor, even after payment of the debt, when the mortgagee has entered for condition broken, is by bill in equity.   Parsons v. Willis, 17 Mass. 419.

So strict was the adherence of the common law to the

principles distinguishing the several sorts of estates, that when the title had become absolute in the mortgagee, no subsequent acceptance of the mortgage money nor reconveyance of the land, would destroy the legal rights of his widow to dower.   Park on Dow. 100 ; Co. Litt. 221.

In Dexter v. Harris, 2 Mason, Judge Story says, "a mortgage in fee conveys a conditional estate." In the United States v. Fisher, 2 Cranch, 358, the point was, whether a transfer of property by the debtor defeated the priority of the United States over other creditors, the court holding that a fair transfer would not be overreached by the statute, declared a conveyance by mortgage to be good, for "a mortgage is a conveyance of property and passes it conditionally to the mortgagee." In Conrad v. Ins. Co. 1 Pet. 441, remarking upon the character of the instrument, the court say, "a mortgage in discussions in a court of equity is sometimes called a lien for a debt, and so it is and something more ; it is the transfer of the property."

Describing the estate of the mortgagee in Watson v. Dickens, 12 Smedes & Marsh., it is said : "After condition is broken, certainly the absolute ownership is vested in the mortagee." Again, in Head v. Dowell, 40 Miss. 796, it is declared "that a mortgage or deed in trust conveys the full legal title, and nothing remains behind but the equity of redemption." On a sale by the sheriff of equitable estates, as such the equity of redemption, the purchaser must go into a court of chancery to get the legal title, 5 Smedes & Marsh. 506 ; 7 ib. 730.

So completely is the mortagee invested with the legal title, that after payment, if satisfaction is not indorsed on the record of the mortgagee, there must be a reconveyance, or some other formal mode to re-invest the mortgagor with the title, or he must resort to chancery, as he has but an equity.   Wolf v. Dowell, 13 Smedes & Marsh.; Smith v. Otby, 26 Miss. 298.

We are unable to discover the reason why the husband may, for a valuable consideration, convey absolutely, so as

to deprive the widow of dower, and yet a less conveyance by way of mortgage not be within the act. Both are within its letter. If the husband should convey absolutely to his creditor, in satisfaction of his debt, it would hardly be pretended that the claim to dower would not be terminated. If he conveys conditionally, as security for the debt, the husband may redeem in his life-time ; if he fails, she may redeem and call upon the heir for contribution ; or upon foreclosure, she may be endowed out of the surplus.

In employing the term in the dower act (art. 162, Code 467), "conveyance," "conveyed," we suppose that the legislature meant the sense in which the word is ordinarily used in our jurisprudence. It is a technical or *quasi*-technical word of precise and definite import. As defined by Bouvier, 1 Law Dic. 346 "Conveyance is the transfer of the title to land, by one person to another." "The instrument itself is called a conveyance." It is a general term indicating the several modes of passing title. Such was the import given to it in Sessions et ux. v. Bacon, 23 Miss. 273. The wife had power with the concurrence of her husband to "convey" her separate property. The objection was that this did not authorize her to mortgage it. But, argued the court, as the major includes the minor ; if she may convey absolutely, it is clear that she could exercise the less power of making a "conditional conveyance."

The English rule, that the widow of the mortgagee is dowable, never obtained a solid footing in the American common law. The English courts uniformly held that dower did not obtain in equitable estates, and so the law continued until the statute of 34 William IV, when the right was extended so as to embrace them also. The doctrine is, perhaps, now universal in all the states, that courts of equity regard the mortgagor by virtue of his equitable title as substantial owner, his estate being burdened with the trust imposed by the defeasance clause. He is seized of an equitable estate of inheritance, of which

the widow was dowable.    Her right is confined to this equitable estate whatever its extent and value.

Whitehead v. Middleton, 2 How. 696, very forcibly and clearly states the principle.    The widow of the mortgagor is entitled to dower, as against all other persons except the mortgagee, and the husband's seizen is good as against all other persons and sufficient to uphold her right.

Art. 12, Rev. Code 308, is nothing more than a legislative declaration of a rule which had been already incorporated into the jurisprudence of this state, and the American states generally, that the mortgagor shall be deemed to be the legal owner of the mortgaged property, except as to the mortgagee or his assigns after condition broken, at least so far as dower questions and interests are involved.    The language of the chief justice in the case already quoted from 2 How. 697, is:    "As regards all other persons, the law seems to be now well settled, that the mortgagor is deemed to be seized, notwithstanding the mortgage, and before foreclosure or entry is deemed the owner. of the land.    The inevitable result is, that the widow must be entitled to dower, although the husband had but one equity of redemption."

We are conducted to these conclusions, that a mortgage in fee, executed by the husband during the coverture, in good faith to secure a debt, is a "conveyance for a valuable consideration within the statute," and imposes an incumbrance upon the estate, to which the dower of the widow is subordinate.

. That until foreclosure, after the death of the husband, she may have her dower assigned, but it will be subject to the mortgage.

The widow may redeem the land by payment of the mortgage debt, have her dower assigned and compel the heir to make contribution.

Upon foreclosure, after the death of the husband, the surplus being the value and representation of the equity of redemption, she may be endowed of that.

In this case of Mrs. Pickett, the widow of the mortgagor was made a defendant; in her answer treated by the parties and the court as a plea. She claims dower in the mortgaged premises and also a homestead exemption. The plea was overruled, and from that order an appeal was taken.

If by that decision the chancery court meant or intended to hold that the widow had no dower interest in the mortgaged premises, it was erroneous. She is entitled to dower, upon foreclosure, in the surplus, after satisfying the mortgage debt. As we have said, her title is subordinate to the mortgagee.

We reverse the decree of the chancellor, and remand the cause, with directions to extend and apply the dower of Mrs. Pickens, to whatever surplus, if any there may be, upon foreclosure and sale of the lands.